**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| FAR WEST INSURANCE COMPANY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.:  2:07-CV-11-PRC |
| | ) | |
| J. METRO EXCAVATING, INC., JOHN S. | ) | |
| METRO and ROSALYN E. METRO, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion for Summary Judgment of Plaintiffs[sic] Far

West Insurance Company [DE 18], filed by Plaintiff Far West Insurance Company on August 17,

2007.  For the reasons set forth below, the Court grants Plaintiff's Motion for Summary Judgment.


**PROCEDURAL BACKGROUND**

On January 11, 2007, Plaintiff Far West Insurance Company  ("Far West"), a Nebraska

domiciled corporation in liquidation, filed a Complaint in this matter against J. Metro Excavating,

Inc. ("Metro"), John S. Metro, and Rosalyn E. Metro (collectively "Defendants") for breach of

contract and exoneration arising out of a General Agreement of Indemnity ("Indemnity Agreement")

entered into between Far West and Defendants in relation to a surety bond ("Bond") issued by Far

West, as surety, on behalf of Metro, as principal, in favor of LAX, Inc. d/b/a Double Tree Lake

Estates ("LAX"), as obligee.

In Count I (Breach of Contract) of the Complaint, Far West alleges that Defendants were

obligated to indemnify Far West under the terms of the Indemnity Agreement, that Defendants

breached the Indemnity Agreement by failing and refusing to indemnify and hold harmless Far West

from claims and to post collateral in the amount of Far West's bond exposure, and that Far West has

been damaged by the material breach in the initial amount of $206,000.00 plus costs and expenses. In this Count, Far West asks the Court to enter an order of judgment against Defendants requiring Defendants to post collateral in the initial amount of $206,000.00 or in an amount sufficient to secure Far West from any losses, expenses, and attorneys' fees.

In Count II (Exoneration), Far West alleges that it has demanded that Metro indemnify and hold it harmless from the claims asserted and to post collateral in the amount of $206,000.00, which Far West alleges represents Far West's Liquidator's determination of LAX's claim against the Far West estate. Far West further alleges that Metro owes Far West the duty of exoneration, requiring Metro to perform its obligation before Far West is called upon to perform its obligations under the Bond, that Far West is entitled to be fully exonerated by Metro for the claim by LAX against Far West's estate, and that Metro has failed and refused to meet their obligations under the Indemnity Agreement by failing to indemnify Far West from the pending claims and by failing to post collateral in any amount. Far West asks the Court to enter an order of judgment against Metro for exoneration of Far West, directing Metro to pay LAX in the amount of $206,000.00 cash as collateral to secure future payment and to enter an order of judgment against Metro in favor of Far West for its costs and expenses incurred as a result of issuing the Bond and enforcing the General Indemnity Agreement provisions.

On February 8, 2007, Defendants filed an Answer, denying certain allegations in the Complaint relevant to the instant Motion for Summary Judgment. Defendants deny that any power of attorney granted to Far West by Defendants in the Indemnity Agreement was exercised diligently and in good faith, that the Proof of Claim made by LAX to Far West was timely and properly made under the terms of the Bond such that there was no valid claim and no loss to Far West, that allowing

2

a claim amount is the establishment of a compensable loss under the Bond and the Indemnification Agreement, that the Liquidator's revision of the recommendation was in compliance with the fiduciary and other duties under the terms of the power of attorney created by the Indemnification Agreement, and that the allowance of the claim value is compensable under the Bond and the Indemnification Agreement.

On August 17, 2007, Far West filed the instant Motion for Summary Judgment, a Memorandum in Support, and a Rule 56.1 Statement of Material Facts. On September 17, 2007, Defendants filed a Memorandum in Opposition to the Motion for Summary Judgment and a Rule 56.1 Statement of Genuine Issues. On October 5, 2007, Far West filed a Reply in support of the Motion for Summary Judgment.

On December 5, 2007, the mediator selected by the parties notified the Court that mediation was set in this matter for January 28, 2008, which was then rescheduled for March 5, 2008. On March 7, 2008, the mediator notified the Court that a settlement had not been reached, and on March 10, 2008, Plaintiff also notified the Court of the result of mediation and requested a ruling on the pending Motion for Summary Judgment.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of

4

material fact exists.  *See Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings.  *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).  Rule 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party.  *See NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).  A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact.  *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## MATERIAL FACTS

### A.  The Parties

Far West is currently under an Order of Liquidation by the State of Nebraska.  During the relevant time period of this action, Far West was in the business of providing surety bonds to contractors and other companies. Defendant J. Metro Excavating, Inc. ("Metro") is an Indiana Corporation with its principal place of business in Cedar Lake, Indiana.  Defendants John S. Metro and Rosalyn E. Metro are residents of Cedar Lake, Indiana, and are citizens of Indiana.

### B.  The Bond

Far West provided a surety bond, number 1352141 ("Bond"), to Metro in the amount of $206,000.00.  The Bond was issued on behalf of Metro, as principal, in favor of LAX, Inc. d/b/a Double Tree Lake Estates ("LAX"), as obligee, and the Bond secured the obligations of Metro to perform the Construction Contract dated April 3, 1998 between Metro and LAX described as "Excavating for Lake, Phase I, Corner of Randolph Street & 109th, Crown Point, Indiana."  Pl. Br., Exh. 3 (Peckler Aff.), Exh. A. (Bond), p. 1.

The Bond set forth the conditions under which Far West's obligations under the Bond arose:

3.  If there is no [Default by LAX], [Far West's] obligation under this Bond shall arise after:

> 3.1 [LAX] has notified [Metro] and [Far West] . . . that [LAX] is considering declaring a Contractor Default and has requested and attempted to arrange a conference with [Metro] and [Far West] to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract.  If [LAX], [Metro] and [Far West] agree, [Metro] shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive [LAX's] right, if any, subsequently to declare a Contractor Default; and

6

> 3.2 [LAX] has declared a Contractor Default and formally terminated [Metro's] right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and
>
> 3.3 [LAX] has agreed to pay the Balance of the Contract Price to [Far West] in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with [LAX].
>
> 4. When [LAX] has satisfied the conditions of Paragraph 3, [Far West] shall promptly and at [Far West's] expense take one of the following actions:
>
> > . . . .
> > 4.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:
> >
> > > . . . .
> > > .2 Deny liability in whole or in part and notify [LAX] citing reasons therefor.

*Id*., p. 2.

The Bond also set a date for the institution of any legal or equitable proceeding under the

Bond:

> 9. Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

*Id*., p. 3.

## C.  The Indemnity Agreement

On February 25, 1998, Metro, John S. Metro, and Rosalyn E. Metro (collectively "Defendants") entered into a General Agreement of Indemnity ("Indemnity Agreement") with Far West in consideration for the issuance of the Bond.  Metro does not contest the validity or enforceability of the Indemnity Agreement.

The Indemnity Agreement requires Defendants, as the indemnitors, to indemnify and hold Far West harmless from any and all losses incurred under its bonds, including costs and attorneys' fees:

> 2.  INDEMNITY – In consideration of the execution and delivery by Surety of a Bond or any Bonds on behalf of Principal, the Undersigned agreed to indemnify and hold Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature which arise by reason of, or in consequence of, the execution by Surety of any Bond on behalf of Principal and whether or not Surety shall have paid any sums in partial or complete payment thereof, including but not limited to: sums paid including interest, or liabilities incurred in settlement of claim; expenses paid or incurred in connection with claims, suits, or judgments under such Bonds: expenses paid or incurred in enforcing the terms of this Agreement; expenses paid or incurred in procuring or attempting to procure release from liability under its Bond by Surety; expenses incurred in recovering or attempting to recover losses or expenses paid or incurred: attorneys fees and all legal expenses related to any items herein: including in-house attorney fees, costs and expenses: investigation, accounting or engineering services: adjustment of claims: premiums on Bonds issued by Surety on behalf of Principal: monies advanced or loaned in accordance with Section 4(d) of this Agreement.

Pl. Br., Exh. 3 (Peckler Aff.), Exh. B. (Indmty. Agrmt.), ¶ 2.  Paragraph 2 of the Indemnity Agreement further addresses the conditions of Defendants' indemnity of Far West:

> In furtherance of such indemnity:
> A.      The liability of the undersigned shall extend to and include all amounts paid by Surety in good faith under the belief that 1) Principal was in Default hereinafter described in Section 3 of this agreement; 2) Surety was or might be liable therefore; 3) such payments were necessary or advisable to protect any of Surety's rights as to avoid or lessen Surety's liability or alleged liability.

B.     Surety shall have the right to incur such expenses in handling a claim as it shall deem necessary, including but not limited to the expense for investigative, accounting, engineering and legal services.

. . . .

D.     In any claim or suit hereunder, an itemized statement of the aforesaid losses and expenses, sworn to by an officer of Surety, or the vouchers or other evidence of disbursement by Surety; shall be prima facie evidence of the fact and extent of the liability hereunder of the Undersigned.

E.     Surety shall have the right to reimbursement of its expenses, premiums and attorneys' fees, including in-house attorneys' fees, costs and expenses hereunder, irrespective of whether any Bond loss payment has been made by Surety.  In any suit on this Agreement, Surety may recover its further expenses and attorneys' fees, including in-house attorneys' fees, costs and expenses incurred in suit.

. . . .

*Id.*

As to Default, the Indemnity Agreement provides:

3.   DEFAULT – Principal shall be in Default with respect to a Contract and hereunder if any of the following occur:

A. Principal breaches, abandons or repudiates any Contract.

B. Any Obligee declares Principal to be in Default.

. . . .

E.  Principal, or any one of the Undersigned, breaches any provision of this Agreement.

*Id.* at ¶ 3.

The Indemnity Agreement also requires that Defendants post collateral upon Far West's

demand:

5.   COLLATERAL SECURITY – If a claim is made against Surety, whether disputed or not, or if Surety deems it necessary to establish reserve for potential claims, and upon demand from Surety, the Undersigned shall deposit with Surety cash or other property acceptable to Surety, as collateral security, in sufficient amount to protect Surety with respect to such claim or potential claims and any expense [and] attorneys' fees.  Such collateral may be held or utilized by Surety until it has received evidence of its complete discharge from such claim [or] potential claims, and until it has been fully reimbursed for all loss, expense, attorneys' fees and unpaid premiums.  If said Collateral, [or] collateral previously deposited with Surety, is deemed insufficient by Surety, the Undersigned agrees to deposit

additional or substit[ute] collateral in an amount and type acceptable to Surety. This may include Surety's demand for cash collateral in substitution for trust deed collateral.

*Id.* at ¶ 5.[1]

The Indemnity Agreement provides for a Power of Attorney:

7.   Power of Attorney – The Undersigned hereby irrevocably nominate, constitute, appoint and designate Surety or its designee as the attorney-in-fact with the power, but not the obligation, to exercise all of the rights assigned, transferred and set over to Surety by the Undersigned in this Agreement, and to make, execute and deliver any and all additional or other assignments, documents or papers including but not limited to: the execution of Instruments referred to in Section 5, the endorsement of checks or other instruments payable to any of the Undersigned deemed necessary and proper by Surety in order to give full effect to the intent and meaning of the within assignment for the full protection intended to be given to Surety under all other provisions of this Agreement. The Undersigned hereby ratify and affirm all acts and actions taken and done by Surety or its designee as attorney-in-fact.

*Id.* at ¶ 7.

Finally, under the "General Provisions" of the Indemnity Agreement, the "Surety shall have every right, defense, or remedy which a personal Surety without compensation would have, including the right of exoneration." *Id.* at ¶ 8.H.

## D.  The Claim Process

On June 8, 1998, LAX terminated Metro. There is no evidence in the record that LAX instituted the steps set forth in Paragraphs 3.1-3.3 of the Bond.

On August 23, 2002, LAX filed with Far West a "Proof of Claim Surety Bond Claim Form" ("Proof of Claim"), signed August 20, 2002. The Proof of Claim lists the claim as one for a "[c]laim

---

[1] The reproduction of this page of the Indemnity Agreement makes it impossible to read certain portions of the document. Accordingly, the Court has inserted the logical missing words as indicated by the alterations in the quotation. To the extent any of the insertions are incorrect, they are not material to the Court's holding.

by performance bond obligee [(LAX)] for cost of completion of contract or for defective construction." Pl. Br., Exh. 3 (Peckler Aff.), Exh. C. (Proof of Claim), ¶ 4.  The brief statement of the claim provides: "Bond principal performed defective construction of a lake excavation on the residential development site and left the job prior to completion.  Bond obligee was forced to obtain another excavation company to complete job." *Id*. at ¶ 5.  The Proof of Claim confirms that June 8, 1998, was the last date that Metro performed work for LAX.

The Proof of Claim also represents that a defense to LAX's claim was being made in the Lake Superior Court in Lake County, Indiana, in the matter of *LAX, Inc. v. J. Metro Excavating*, cause # 45C01-9806-CP-1370, which was brought by LAX against Metro on June 10, 1998, for failure to perform and negligence.  *Id*. at ¶¶ 12, 15.

On December 11, 2003, Horizon Business Resources, Inc. ("Horizon") sent a letter to LAX advising that Horizon had recommended to the Liquidator that they deny the Proof of Claim on the grounds that "liability against the bond has not been established."  Def. Br., Exh. 3.  Horizon explained that the liability had not been established because of the then-ongoing litigation between LAX and Metro in the Lake Superior Court and the forthcoming trial in April 2004.

On April 26, 2004, the Lake Superior Court entered judgment against Metro and in favor of LAX in the amount of $667,041.00 and entered judgment against LAX and in favor of Metro in the amount of $47,198.00.

On August 19, 2005, Horizon sent a letter to LAX advising that, pursuant to a previous letter dated March 10, 2004 (which is in the record), the Liquidator had reviewed LAX's claim, revised its recommendation, and determined that LAX's $206,000.00 claim against the bond would be allowed in the amount of $206,000.00.  The letter further explained:

11

As you have been previously advised, assuming the claim is allowed in whole or in part, it will not be possible to estimate the dividend amount, if any, until the claims are evaluated and the value of the assets that remain in the estate for distribution to claimants has been determined. . . . .

It is important that you understand that the establishment of the claim value does not guarantee you payment of any specified amount, or any amount at all.  If there are sufficient assets, you may receive the full amount of the claim value.  If not, you may receive a smaller pro rata distribution.  Of course, there is the possibility that the assets of the estate will be insufficient to pay any claims.

Pl. Br., Exh. 1 (Complaint), Exh. F. (8/19/05 letter).

### E.  Far West's Request for Indemnification

On October 13, 2004, and February 6, 2006, Far West notified Defendants of LAX's claim, and Far West requested that Defendants indemnify and hold Far West harmless from the pending claim and to post collateral for the claim in accordance with the Indemnity Agreement.  As of July 2007, Defendants have not indemnified Far West nor have they posted any collateral.

### F. Attorneys' Fees

In its Statement of Material Facts, Far West states that it has hired the law firm of Leo & Weber, P.C. to assist Far West in enforcing the terms of the Indemnity Agreement and that, as of July 2007, Far West had incurred $10,601.53 in attorneys' fees and expenses.  In support of the Motion for Summary Judgment, Far West offers the affidavit of Mark Peckler, who is responsible for various aspects of the liquidation of Far West, along with the invoices of Leo & Weber, to prove these costs and expenses.

**ANALYSIS**

In the Motion for Summary Judgment, Far West argues that (1) Defendants entered into and voluntarily agreed to the terms of the Indemnity Agreement in favor of Far West, (2) Defendants do not contest the validity or enforceability of the Indemnity Agreement, (3) the provisions of the Indemnity Agreement provide that Defendants shall hold Far West harmless and secure Far West from any and all liabilities, losses, and expenses of whatsoever kind and nature in resolving claims on bonds issued on behalf of Far West and in enforcing the Indemnity Agreement, (4) the provisions of the Indemnity Agreement provide that Far West shall be able to settle Bond claims if the principal defaults, (5) Far West faces liability of $206,000.00 under the LAX bond claim, (6) Far West has incurred losses and expenses in investigating the claim made by LAX against the Bond issued on behalf of Metro and in enforcing the Indemnity Agreement, and (7) Defendants have not indemnified Far West nor have they posted collateral. Far West specifically asks that the Court enter an order providing a judgment against Defendants in the amount of $10,601.53 plus costs and expenses incurred after July 2007 and requiring Defendants to place with Far West the amount of $206,000.00 of funds by money, property, liens, or security interests in property and any additional amount as determined by Far West as security for its obligations under the Bond as Far West faces the potential liability on LAX's $206,000.00 claim.[2]

In response, Defendants argue that there is a question of fact as to whether Far West properly administered LAX's claim by ultimately allowing the claim and that Far West is not entitled to recovery because it has not paid any money to LAX and thus has not incurred any loss. Defendants

---

[2] In the Motion for Summary Judgment, Far West seeks judgment against Metro only and does not request any relief against the individual Defendants, John S. Metro and Rosalyn E. Metro. However, because the Memorandum in Support of the Motion for Summary Judgment specifically seeks relief against all three Defendants, the Court will construe the entire motion as against all Defendants.

also argue that additional time to conduct discovery is necessary in order to determine whether Far West breached a fiduciary duty to Defendants in allowing LAX's claim.

## A.  Breach of the Indemnity Agreement

Indiana courts have recognized that indemnity agreements are a form of contract and, as such, are construed according to the rules and principles of the law of contracts.  *See TLB Plastics Corp. v. Procter & Gamble Paper Prods. Co.*, 542 N.E.2d 1373, 1377 (Ind. Ct. App. 1989); *Kruse Classic Auction v. Aetna Cas. and Sur.*, 511 N.E.2d 326, 328 (Ind. Ct. App. 1987); *Bell v. Commonwealth Land Title Ins. Co., Inc.*, 494 N.E.2d 997, 999 (Ind. Ct. App. 1986).  If the words of the indemnity agreement are clear and unambiguous, they are to be given their plain and ordinary meaning.  *See Bell*, 494 N.E.2d at 999 (citing *Anderson v. State Farm Mut. Auto Ins. Co.*, 471 N.E.2d 1170 (Ind. Ct. App. 1984)).  A surety is entitled to stand on the language of an express indemnification agreement.  *Fidelity and Deposit Co. v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983).  An indemnity agreement should be construed to cover all losses and damages to which it reasonably appears that the parties intended it to apply.  *Zebrowski and Assocs., Inc. v. City of Indianapolis*, 457 N.E.2d 259, 261 (Ind. Ct. App. 1983) (citing *Freigy v. Gargaro Co.*, 60 N.E.2d 288 (Ind. 1945)).

Courts have granted motions for summary judgment in favor of a surety for specific performance of the collateral security obligation of an indemnity agreement.  *The Hanover Ins. Co. v. Clark*, No. 5 C 2162, 2006 WL 2375428, at * 6 (N.D. Ill. Aug. 15, 2006) (citing *Am. Motorists Ins. Co. v. United Furnace Co., Inc.*, 876 F.2d 293, 299-300 (2d Cir. 1989); *Safeco Ins. Co. v. Schwab*, 739 F.2d 431, 433-34 (9th Cir. 1984)); *United States Fid. & Guar. Ins. Co. v. Cler Constr.*

*Servs., Inc.*, No. 03 C 1405, 2003 WL 22508169, at *2 (N.D. Ill. Nov. 3, 2003); *Am. Motorists Ins.*

*Co. v. Pennsylvania Beads Corp.*, 983 F. Supp. 437, 439-40 (S.D.N.Y. 1997); *Mountbatten Sur. Co.*

*v. Szabo Contracting, Inc.*, 812 N.E.2d 90 (Ill. Ct. App. 2004).   Courts have traditionally analyzed

the plain language of the indemnity agreement to determine a surety's right to obtain the collateral

security.   *See, e.g.*, *United Furnace Co., Inc.*, 876 F.2d at 299-300; *Safeco*, 739 F.2d at 433-34

(holding that an indemnity agreement with a surety should be construed as requiring the indemnitor

to provide collateral security upon demand by the surety and prior to actual bond loss); *Hanover*,

2006 WL 2375428 at *6; *see also* 3 Bruner & O'Connor on Constr. Law § 10:103, n. 6.

In the instant case, the terms of the Indemnity Agreement are clear and unambiguous.

Paragraph 2 of the Indemnity Agreement requires Defendants, as indemnitors, to indemnify Far

West for any "demands" that arise as a result of the Bond, whether or not Far West has yet made any

payment:

> 2.  INDEMNITY – In consideration of the execution and delivery by Surety of a Bond or any Bonds on behalf of Principal, the *Undersigned agree to indemnify and hold Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature which arise by reason of, or in consequence of, the execution by Surety of any Bond on behalf of Principal and whether or not Surety shall have paid any sums in partial or complete payment thereof,* including but not limited to: sums paid including interest, or liabilities incurred in settlement of claim; expenses paid or incurred in connection with claims, suits, or judgments under such Bonds: expenses paid or incurred in enforcing the terms of this Agreement; expenses paid or incurred in procuring or attempting to procure release from liability under its Bond by Surety; expenses incurred in recovering or attempting to recover losses or expenses paid or incurred: attorneys fees and all legal expenses related to any items herein: including in-house attorney fees, costs and expenses: investigation, accounting or engineering services: adjustment of claims: premiums on Bonds issued by Surety on behalf of Principal: monies advanced or loaned in accordance with Section 4(d) of this Agreement.

Pl. Br., Exh. 3 (Peckler Aff.), Exh. B. (Indmty. Agrmt.), ¶ 2 (emphasis added). As to Default, the

Indemnity Agreement provides:

15

    3.   DEFAULT – Principal shall be in Default with respect to a Contract and hereunder if any of the following occur:
A.  Principal breaches, abandons or repudiates any Contract.
B.  Any Obligee declares Principal to be in Default.
. . . .
E.   Principal, or any one of the Undersigned, breaches any provision of this Agreement.

*Id.* at ¶ 3.  In addition, the Indemnity Agreement provides that Defendants shall deposit either cash or property with Far West, on Far West's demand, if a claim is made against Far West or if Far West deems such collateral necessary to establish a reserve for potential claims:

    5.   COLLATERAL SECURITY – If a claim is made against Surety, whether disputed or not, *or if Surety deems it necessary to establish reserve for potential claims, and upon demand from Surety, the Undersigned shall deposit with Surety cash or other property acceptable to Surety, as collateral  security, in sufficient amount to protect Surety with respect to such claim or potential claims and any expense [and] attorneys' fees*.  Such collateral may be held or utilized by Surety until it has received evidence of its complete discharge from such claim [or] potential claims, and until it has been fully reimbursed for all loss, expense, attorneys' fees and unpaid premiums.  If said Collateral, [or] collateral previously deposited with Surety, is deemed insufficient by Surety, the Undersigned agrees to deposit additional or substit[ute] collateral in an amount and type acceptable to Surety.  This may include Surety's demand for cash collateral in substitution for trust deed collateral.

*Id.* at ¶ 5 (emphasis added).

    In this case, pursuant to the terms of the Indemnity Agreement, Metro was in default with respect to the Bond when LAX terminated Metro on June 8, 1998.  The triggering event requiring Defendants to then indemnify Far West for future liability was LAX's demand on Far West for payment under the Bond, evidenced by the Proof of Claim, which Far West's Liquidator has agreed to allow in the amount of $206,000.00.  *See, e.g., United Furnace Co., Inc.*, 876 F.2d at 301 (holding that the triggering event was the "making of a 'demand'" by the obligee on the surety); *Pennsylvania Beads Corp.*, 983 F. Supp. at 439-40 (holding that, under the terms of the indemnity agreement, once

16

demand on the surety was made from the bond obligee, the indemnitor was required to provide collateral to the surety in an amount sufficient to cover the surety's potential liability); 3 Bruner § 10:103 ("The typical indemnity clause of a GAI requires an indemnitor to indemnify the surety before it has incurred loss."); 26 Ind. Law Encycl. Suretyship § 56 ("[A]fter maturity of the debt, although the surety has not paid and has not been troubled by the creditor, or asked by the creditor to pay, a court sitting in equity may compel the principal to exonerate the surety from liability or to pay the debt."). Far West bargained in the Indemnity Agreement for collateral security to be given at its request, and Defendants have refused to do so. Therefore, as a result of this breach of the Indemnity Agreement by Defendants, Far West now asks the Court to order that Defendants post as collateral $206,000.00 pursuant to the terms and conditions of the Indemnity Agreement to indemnify Far West for its potential liability to LAX. As there are no genuine issues of material fact as to the requirements of the plain language of the Indemnity Agreement, Far West has the right to require Defendants to specifically perform their collateral security obligation in the amount of $206,000.00. Accordingly, the Court grants the Motion for Summary Judgment on Far West's request that the Court order Defendants to deposit collateral security in the amount of $206,000.00 to indemnify Far West against liability for future losses on LAX's claim.

In their Response Brief, Defendants do not contest that they are required under the Indemnity Agreement to post collateral at the request of Far West. However, Defendants argue that Far West has breached a fiduciary duty under the Bond and that Far West has not yet made any payments to LAX.[3] Neither argument alters the Court's ruling.

---

[3] In its Reply Brief, Far West argues that Defendants' allegations regarding the administration of the underlying claim in liquidation are improper because they were not raised in Defendant's Answer. However, paragraphs 14, 15, and 18 of the Answer address these issues.

First, Defendants argue that Far West has breached its fiduciary duty under the Bond, reasoning that Far West did not act in good faith because there is an inference that (1) Far West's Liquidator is allowing as many claims against Far West as possible, including the instant claim, so as to increase the money that it may eventually distribute pro rata to all of Far West's claimants (including LAX), and that (2) Far West has no obligation on the Bond to LAX because LAX did not timely make its claim against Far West.  Far West correctly asserts in reply that a surety does not have a fiduciary relationship with its principal.

Some states have held that, in contrast with an insurer in a bilateral insurance relationship, a fiduciary duty or a special implied duty of good faith and fair dealing does not apply to the tripartite relationship of a surety, its principal, and the obligee under a bond.  *See, e.g.*, 3 Bruner § 10:109 ("Surety's general agreement of indemnity–Surety's obligations to obligee and principal and implied duty of good faith"); 4 Bruner § 12:7 ("Suretyship and 'bad faith'"); *Bruce v. Martin*, 87 Civ. 7737, 90 Civ. 870, 90 Civ. 4561, 1993 WL 148904, at *6 (S.D.N.Y. Apr. 30, 1993) (citing *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*, 892 F.2d 199, 207 (2d Cir. 1989)); *Cates Constr., Inc. v. Talbot Partners*, 980 P.2d 407 (Cal. 1999); *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 282 (Tex. 1998); *Great Am. Ins. Co. v. Gen. Builders, Inc.*, 934 P.2d 257, 263 (Nev. 1997).  Although it does not appear that Indiana courts have directly addressed the issue of whether a surety owes a fiduciary duty to its principal, it is well settled under Indiana law that a business or arm's length contractual relationship does not give rise to a fiduciary relationship.  *See Cook Biotech, Inc. v. Acell, Inc.*, Case No. 4:03CV46, 2005 WL 1473892, at *7 (N.D. Ind. June 21, 2005) (citing Indiana case law); *Kruse v. Nat'l Bank of Indianapolis*, 815 N.E.2d 137, 148 (Ind. Ct. App. 2004) (holding that there is no fiduciary duty between a lender and a

borrower unless certain facts exist that establish a relationship of trust and confidence between the two).  Defendants have not set forth any facts to establish that Far West, as surety, owed Metro, as principal, a common law fiduciary duty under the Bond.

However, under the Indemnity Agreement, Far West does owe Defendants a duty of "good faith" on payments made under certain conditions:

> A.    The liability of the undersigned shall extend to and include all amounts paid by Surety in *good faith* under the belief that 1) Principal was in Default hereinafter described in Section 3 of this agreement; 2) Surety was or might be liable therefore; 3) such payments were necessary or advisable to protect any of Surety's rights as to avoid or lessen Surety's liability or alleged liability.

Pl. Br., Exh. 3 (Peckler Aff.), Exh. B. (Indmty. Agrmt.), ¶ 2 (emphasis added); *see also CAT Contracting*, 964 S.W.2d at 286 (holding that an indemnity agreement between the surety and the principal on the bond may place upon the surety an obligation to act in good faith).

The Indiana Court of Appeals has defined "bad faith" as "not simply bad judgment or negligence[;] rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity.  It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will."  *Kruse*, 815 N.E.2d at 148 (quoting *Casa D'Angelo, Inc. v. A&R Realty Co.*, 553 N.E.2d 515, 519 (Ind. Ct. App. 1990) (citation omitted)); *see also CAT Contracting*, 964 S.W.2d at 286 (holding that "good faith" as required by an indemnity agreement on the part of the surety "refers to conduct which is honest in fact, free of improper motive or willful ignorance of the facts at hand.  It does not require proof of a "reasonable" investigation by the surety.").

Because the Indemnity Agreement in this case requires Defendants to post collateral at the request of Far West, whether the Liquidator acted in good faith in agreeing to allow LAX's claim

19

in the amount of $206,000.00 does not affect Defendants' obligation under the Indemnity Agreement to post collateral.  Far West has not yet made any payments that would trigger the "good faith" provision in Paragraph 2.A. of the Indemnity Agreement.  Moreover, whether Defendants' good faith arguments may be applicable to some future claim against Far West for amounts actually paid to LAX under the Indemnity Agreement does not affect the Court's determination that Defendants are obligated to post collateral at this time and thus are not before the Court for review.

Defendants also argue that (1) the Indemnification Agreement only imposes potential liability on Defendants for "losses" and "sums paid" and that Far West has not made any payment on the claim to LAX and that (2) the Indemnity Agreement does not allow Far West to request the full Bond amount from Defendants when only a portion of the $206,000.00 allowed claim may eventually be paid to LAX through Far West's liquidation.

First, although Defendants correctly identify that Far West has not made any payment on the claim, Defendants' limited reading of their obligations is misplaced as the Indemnity Agreement sets forth Defendants' obligation to indemnify Far West not only against "liabilities, losses, costs, damages, attorneys' fees and expenses" but also against "demands" as discussed above.  In this case, Far West is seeking indemnification for its liability for losses, which, in this case, is the liability Far West faces on LAX's demand.  Paragraph 2 of the Indemnity Agreement establishes that Defendants are required to fulfill their obligation to post collateral at the request of Far West "whether or not [Far West] shall have paid any sums in partial or complete payment [of the Bond]."  Pl. Br., Exh. 3 (Peckler Aff.), Exh. B. (Indmty. Agrmt.), ¶ 2.

Second, Defendants reiterate that LAX's claim of $206,000.00 is subject to a proportionate reduction in Far West's liquidation and conclude that, as a result, Defendants' obligation under the

bond has not been established. Far West's liability to LAX has been fixed at $206,000.00. However, it is unknown how much of that $206,000.00 liability will eventually be paid to LAX through Far West's liquidation. Regardless, the amount of Far West's liability to LAX under the Bond need not be determined or established in order for Far West to require Defendants to post collateral under the Indemnity Agreement. Contrary to Defendants' assertion, the Collateral Security provision of the Indemnity Agreement requires Defendants to deposit collateral "in sufficient amount to protect [Far West] with respect to such claim or potential claims and any expense [and] attorneys' fees." Pl. Br., Exh. 3 (Peckler Aff.), Exh. B. (Indmty. Agrmt.), ¶ 5. Therefore, because the Bond amount is $206,000.00 and because the Liquidator has indicated to LAX that it is allowing the full claim amount of $206,000.00 under the Bond, even though only a portion of those funds may eventually be paid to LAX, the full amount of $206,000.00 is an "amount sufficient to protect" Far West with respect to LAX's claim. *See* Pl. Br., Exh. 3 (Peckler Aff.), Exh. B. (Indmty. Agrmt.), ¶ 5.

Moreover, contrary to Defendants' assertion, Far West is not seeking to collect a judgment of $206,000.00 as an award of indemnification for loss (the equivalent of the common law right of reimbursement), nor could it given that it has not yet made any payment to LAX on the claim; rather, Far West asks only that Defendants be required to deposit collateral under the Indemnity Agreement to be held in trust by Far West until its final liability to LAX is determined in the liquidation proceeding.[4] In other words, Defendants are not being asked to fund other claims made against Far

---

[4] In their Response Brief, Defendants cite Indiana law to show that a plaintiff in a breach of contract case is limited in recovery to the loss actually suffered by the breach. *See* Def. Br., p. 6. However, a review of the cases cited by Defendants reveal that those cases dealt not with a request for specific performance, as in the instance case, but rather for a payment of a sum of money. *See Gasaway v. Lalen*, 526 N.E.2d 1199, 1203 (Ind. Ct. App. 1988); *Indiana University v. Indiana Bonding & Sur. Co*, 416 N.E.2d 1275, 1288 (Ind. Ct. App. 1981); *Lowe v. Turpie*, 44 N.E. 25, 31 (Ind. 1896).

West in liquidation because Far West is limited to using the collateral security deposited by Defendants for the payment of the actual amount of the claim paid, in good faith, to LAX.

In the event that LAX's claim against Far West in liquidation is reduced to less than or none of the $206,000.00 allowed claim or in the event that Far West breaches a duty of good faith under the Indemnification Agreement, Defendants are entitled to have the balance of the collateral returned to them. *See United Furnace Co., Inc.*, 876 F.2d at 300 ("In the event the amount of liquidated damages is ultimately reduced or eliminated by [the obligee], then, as conceded by [the surety] at oral argument, [the indemnitor] would be entitled to a return of any excessive security it had provided to [the indemnitee]); *Safeco*, 739 F.2d at 433 ("If the claim on the bond must be paid, then the surety will pay the loss from the indemnitor's funds; otherwise, the surety must return the funds to the indemnitor. Sureties are ordinarily entitled to specific performance of collateral security clauses."); *Hanover Ins. Co.*, 2006 WL 2375428 at *6; *BIB Const. Co., Inc. v. Fireman's Ins. Co. of Newark, New Jersey*, 625 N.Y.S.2d 550 (1995).

Finally, the Court recognizes that Count I of the Complaint seeks to enforce Far West's express indemnity rights against liability for future losses under the Indemnity Agreement whereas the common-law counterpart of this contractual right is found in Count II, which seeks to enforce Far West's equitable right of exoneration for the same liability for future losses. *See* 3 Bruner § 10.103; 4 *Id.* § 12:97; 23 Williston on Contracts (4th ed.) § 61:61. Both Counts seek to protect Far West from liability for future losses on LAX's claim. "Where a written agreement exists, the surety's indemnity rights will be determined by the contract rather than by common-law indemnity principles." 3 Bruner § 10.103; *see also Fidelity and Deposit Co.*, 722 F.2d at 1163. In this case, the Indemnity Agreement grants Far West all of the rights to which a surety without compensation

22

would be entitled, including exoneration.  Through its Motion for Summary Judgment, Far West seeks indemnification for liability for future losses by requesting specific performance of the collateral posting provision under the terms of the Indemnity Agreement to secure its right of exoneration.  Accordingly, any additional relief sought in Count II of the Complaint is now moot.

### B.  Attorneys' Fees and Costs

Indiana law provides that "[a]n indemnitee is entitled to recover attorney's fees expended defending the underlying claim and prosecuting the claim for indemnification."  *Tack's Steel Corp. v. ARC Constr. Co., Inc.*, 821 N.E.2d 883, 890 (Ind. Ct. App. 2005) (citing *Bethlehem Steel Corp. v. Sercon Corp.*, 805 N.E.2d 1163, 1168 (Ind. Ct. App. 1995), *trans. denied*; *Fort Wayne Lodge, LLC v. EBH Corp.*, 805 N.E.2d 876, 887 (Ind. Ct. App. 2004)).  Far West seeks payment of its costs and expenses in seeking the instant relief to enforce the terms of the Indemnity Agreement in an un-reimbursed amount of $10,601.43 as of July 2007 and related costs incurred after July 2007.[5]

The Indemnity Agreement provides that Defendants shall indemnify Far West "against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses," including "expenses paid or incurred in enforcing the terms of the Agreement" and "attorneys[] fees and all legal expenses related to any items herein."  Pl. Br., Exh. 3 (Peckler Aff.), Exh. B. (Indmty. Agrmt.), ¶ 2.  In support of this request, Far West has submitted invoices from its law firm and the affidavit of Mark Peckler for these costs and expenses already paid by Far West.  A review of these invoices demonstrates that all of the requested costs and expenses are attorneys' fees or costs directly related

---

[5] Although Far West's Complaint does not specifically include a request for a judgment for costs and expenses already incurred, the Motion for Summary Judgment specifically invokes Far West's right to payment of these costs and expenses arising out of the Indemnity Agreement.

to the instant litigation. Pursuant to the Indemnity Agreement, the invoices along with Peckler's affidavit are "*prima facie* evidence of the fact and extent of the liability hereunder of the [Defendants]" because they are "an itemized statement of the aforesaid losses and expenses, sworn to by an officer of [Far West], or the vouchers or other evidence of disbursement by [Far West]." *Id*. at ¶ 2.D; *see also* 3 Bruner § 10.105 ("[T]he 'prima facie evidence' clause is intended to aid the surety's ability to prevail against indemnitors on a summary judgment basis."). Thus, Far West has met its burden of proving expenses and costs.

Far West's burden can only be defeated by Defendants if they establish that Far West acted in bad faith in incurring these costs. *See Utica Mutual Ins. Co. v. Vigo Coal Co. Inc.*, Case No. EV 00-175-C H/H, 2003 WL 23100032, *3 (S.D. Ind. Dec. 5, 2003); 3 Bruner § 10.105, n. 1. However, Defendants have not so defeated Far West's proof. To the extent that Defendants' argument that Far West breached a fiduciary duty is asserted against this request for attorneys' fees under the Indemnity Agreement, the Court finds that any such argument fails for the same reasons that it failed against Far West's demand for collateral security. As noted above, all of the requested expenses and costs were incurred by Far West's legal counsel–the law firm of Leo & Weber–in relation to the instant litigation for specific performance of Defendants' obligation to post collateral, beginning in August 2006; none of the requested expenses appear to relate to the Liquidator's decision to allow LAX's claim, which took place in 2003, 2004, and 2005.[6]

---

[6] The first invoice is dated January 15, 2007, with the first date of service as August 18, 2006, and descriptions of the provided services such as "review indemnity agreement and file materials," "research venue and jurisdictional amount," "phone conference . . . regarding filing suit against indemnitors," "review case file documents for indemnity complaint," "draft indemnity complaint," and "review and revise indemnity and exoneration complaint." Pl. Br., Exh. 3 (Pickler Aff.), Exh. E (Invoices). All of the remaining invoices are similarly related to the instant litigation in which Far West seeks specific performance of Defendants' obligation to post collateral under the Indemnity Agreement.

Accordingly, the Court grants the Motion for Summary Judgment on Far West's request that the Court enter judgment against J. Metro Excavating, Inc., John S. Metro, and Rosalyn E. Metro in the amount of $10,601.53 plus related costs and expenses incurred after July 2007. In light of the absence of records before the Court detailing Far West's costs incurred after July 2007, the Court will enter judgment on Defendants' liability for these costs and expenses, order briefing on the costs incurred after July 2007, and subsequently enter judgment on the amount of Defendants' liability.

### C. Request for Additional Discovery

In their Response Brief, pursuant to Federal Rule of Civil Procedure 56(f), Defendants request additional time to conduct discovery related to Defendants' arguments that there is a question whether Far West properly administered LAX's claim so as to "ultimately 'allow' the claim." Def. Br., pp. 1, 3. As set forth fully in Part A above, the Court has determined that the issue of whether Far West has acted in "good faith" under the Indemnity Agreement is not presently before the Court as it is unrelated to Far West's demand that Defendants fulfill their obligation under the Indemnity Agreement to deposit collateral at the request of Far West. Accordingly, the area in which Defendants seek additional discovery is immaterial to the issues before the Court on summary judgment and the request for additional discovery is denied.

### CONCLUSION

Having reviewed the Motion, the Court **GRANTS** the Motion for Summary Judgment of Plaintiffs[sic] Far West Insurance Company [DE 18].

25

The Court **ENTERS JUDGMENT** in favor of Far West and against J. Metro Excavating, Inc., John S. Metro, and Rosalyn E. Metro and **ORDERS** J. Metro Excavating, Inc., John S. Metro, and Rosalyn E. Metro to place on deposit with Far West the amount of $206,000.00 of funds by money, property, liens, or security interests in property and any additional amount as determined by Far West <u>as collateral security against future obligations of Far West under the Bond and expenses and attorneys' fees</u>.

The Court further **ENTERS JUDGMENT on liability only** for attorneys' fees (in a final amount to be determined as the total of $10,601.53 plus costs and expenses incurred after July 2007) in favor of Far West and against J. Metro Excavating, Inc., John S. Metro, and Rosalyn E. Metro but **WITHHOLDS JUDGMENT on the amount of attorneys' fees** to be awarded pending receipt by the Court of a final amount of the requested costs and fees.  Accordingly, the Court **ORDERS** Plaintiff Far West to **FILE** with the Court on or before **April 25, 2008**, an affidavit with supporting documentation that sets forth the amount of costs and expenses in addition to the original requested amount of $10,601.53, which have been incurred after July 2007.  The Court further **ORDERS** Defendants J. Metro Excavating, Inc., John S. Metro, and Rosalyn E. Metro to **FILE** with the Court on or before **May 12, 2008**, in response to Far West's additional costs and expenses incurred after July 2007 either (1) a response setting forth an objection or (2) a notice of no objection.  The Court **ORDERS** that no reply shall be filed by Far West.  After the issue is fully briefed, the Court will enter judgment on the final amount of costs and expenses.

SO ORDERED this 28th day of March, 2008.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATE DISTRICT COURT

cc:  All counsel of record

26